**DOMTAR, INC., Respondent,**

v.

**NIAGARA FIRE INSURANCE CO., et al., Defendants,**

and

**Canadian General Insurance Co., petitioner, Appellant.**

No. CX–93–2449.

Supreme Court of Minnesota.

June 16, 1995.

Rehearing Denied July 25, 1995.

Larry A. Hanson, Leonard W. Glewwe, Moore, Costello & Hart, St. Paul, for appellant.

Douglas L. Skor, Kathleen E. DiGiorno, Briggs & Morgan, St. Paul, and Paul E. Zevnik, Zevnik, Horton, Guibord & McGovern, Washington, DC, for respondent.

Thomas A. Pearson, Arthur, Chapman, McDonough, Ketterling & Smetak, P.A., Minneapolis, for Niagara Fire Ins. Co., et al.

Geoffrey J. Alexander, Joseph G. Manta, David S. Florig, Manta & Welge, Philadelphia, PA, for Allstate Ins. Co. of Canada.

Margaret J. Orbon, Amy Rich Paulus, Clausen, Miller, Caffrey & Witous, P.C., Chicago, IL, Margie R. Bodas, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, for American Home Assur. Co., et al.

John M. Anderson, Michael A. Klutho, Bassford, Heckt, Lockhart, Truesdell & Briggs, P.A., Minneapolis, for Federal Ins. Co., et al.

John E. Castor, Richard J. Schroeder, Castor, Klukas, Scherer & Lofgren Chartered, Minneapolis, for Gerling Global Reinsurance Corp.

Bradley M. Jones, Stacy A. Broman, Meagher & Geer, Minneapolis, for Columbia Cas. Co.

Thomas P. Kane, Kenneth H. Podpeskar, Oppenheimer, Wolff & Donnelly, St. Paul, Gary W. Westerberg, Leisa Hamm, Lord Bissell & Brook, Chicago, IL, for Certain Underwriters at Lloyd's of London, et al.

Joseph W. Anthony, Leslie Sinner McEvoy, Fruth & Anthony, P.A., Minneapolis, for Allstate Canada (local counsel).

Timothy S.B. Danson, Danson Recht & Freedman, Toronto Ontario M5G 1K2 Canada, for Halifax Ins. Co.

Garrett E. Mulrooney, Maun & Simon, St. Paul, for Zurich Ins. Co.

Thomas Jensen, Ted E. Sullivan, Lind Jensen & Sullivan, Minneapolis, and Richard M. Shusterman, Christopher M. Mikson, White & Williams, Philadelphia, PA, for CIGNA Ins. Co. of Canada.

## OPINION

KEITH, Chief Justice.

The Minnesota Pollution Control Agency ("MPCA") issued to Domtar, Inc. a Request For Response Action ("RFRA") relating to the release or threatened release of hazardous substances at an environmentally contaminated property located in Duluth, Minnesota. Domtar commenced against its alleged insurers the declaratory judgment action underlying this appeal. Domtar sought a judgment declaring that defendants are obliged to defend Domtar against the MPCA's allegations and to reimburse Domtar for investigation costs it has incurred.

Canadian General Insurance Company, one of three alleged primary insurers in the underlying declaratory judgment action, moved to dismiss Domtar's claims based on lack of personal jurisdiction. The district court denied Canadian General's motion, concluding that Canadian General was subject to personal jurisdiction in Minnesota. The Minnesota Court of Appeals affirmed. *Domtar, Inc. v. Niagara Fire Ins. Co.*, 518 N.W.2d 58, 63 (Minn.App.1994). Because we hold that Canadian General is subject to specific personal jurisdiction in Minnesota, we affirm.

The St. Louis River/Interlake/Duluth Tar Site ("the Site") is located in the city of Duluth, St. Louis County, Minnesota. The Site, which encompasses approximately 230 acres of land and river embayment, is located on the north bank of the St. Louis River, approximately four miles upstream from Lake Superior.

For decades, various entities used parts of the Site for industrial purposes. In 1924,

Dominion Tar and Chemical Company, Ltd., which ultimately changed its name in 1977 to Domtar, Inc. ("Domtar"), began operating a tar processing or manufacturing plant on a part of the Site. American Tar and Chemical Company, a subsidiary of Domtar, was created in 1930 and continued operating the tar plant until 1948, when it ceased manufacturing operations. Domtar sold its part of the Site in 1955.

In August 1987, the MPCA initiated a remedial investigation of the Site. The MPCA determined that hazardous substances had been released or threatened to be released at the Site, thereby contaminating soil and groundwater. To further evaluate the environmental and health effects of the contamination and to select the appropriate remediation technology, the MPCA concluded that additional investigations of the extent of the contamination needed to be conducted. Therefore, after identifying Domtar as a party responsible for the release or threatened release of hazardous substances at part of the Site, the MPCA issued to Domtar a RFRA.

Domtar, incorporated under the laws of Canada with its principal place of business located in Montreal, Quebec, Canada, then brought an action against its primary and excess general liability insurers, including Canadian General. Domtar alleges that Canadian General issued to Domtar general liability policies whose coverage periods extended from October 1, 1956 through February 18, 1965. Canadian General has not retained any of Domtar's applications for insurance coverage, any of the policies issued to Domtar, or any of the underwriting materials presumably gathered or generated at the time it issued the policies to Domtar.

Through discovery efforts, one Canadian General policy has been located, allegedly insuring Domtar against liability from January 1, 1960 through January 1, 1963. The policy provides comprehensive general liability coverage for claims arising out of accidents occurring in "Canada and the United States of America."[1] Although the parties

---

1. The territory of coverage is expressed negatively, as an exclusion. Specifically, the policy pro-

vides, "This policy shall have no application with respect to and shall not extend to nor cover any

were able to locate only one policy, covering 1960–63, that policy indicates that it is a replacement or renewal of a prior policy. The district court concluded that circumstantial evidence indicated that Canadian General insured Domtar from 1956–1965.[2]

Canadian General is a Canadian corporation whose principal place of business is located in Scarborough, Ontario, Canada. Canadian General is not now and never has been licensed to do business in Minnesota. Canadian General asserts that it does not maintain, and never has maintained, any offices, employees, or agents in Minnesota. Canadian General asserts that it has no bank accounts in Minnesota and owns no real or personal property in Minnesota. Finally, Canadian General asserts that it has not issued any policies of insurance to any residents of Minnesota.

After the parties completed discovery on the issue of personal jurisdiction, the district court denied Canadian General's motion to dismiss for lack of personal jurisdiction. The court held that Canadian General created a relationship with Minnesota by contracting to insure Domtar against liabilities in Minnesota, and that relationship provided Minnesota courts with personal jurisdiction over Canadian General in suits arising out of or relating to that relationship.

In a split decision, the court of appeals affirmed, holding Canadian General subject to personal jurisdiction in Minnesota because Domtar's cause of action against Canadian General arose out of Canadian General's agreement to insure Domtar's Minnesota activities. *Domtar, Inc.*, 518 N.W.2d at 63. The court of appeals reasoned that Canadian General's underwriting practice should have alerted it to the possibility that Domtar could be sued in Minnesota for environmental contamination caused by a manufacturing facility that Domtar had operated in the state for 30 years. *Id.* at 62. Furthermore, the court of

appeals reasoned, "Canadian General should have expected coverage disputes to be resolved in the same forum as the underlying action." *Id.* In its appeal to this court, Canadian General contends that its contacts with Minnesota are constitutionally insufficient to subject it to personal jurisdiction in Minnesota.

### I.

To sustain personal jurisdiction over a foreign corporation, this court must find both that personal jurisdiction is authorized by the Minnesota long-arm statute and that the exercise of such jurisdiction does not violate the due process requirement that the nonresident defendant have certain "minimum contacts" with the forum state. Minn. Stat. § 543.19 (1994); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980); *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The quality of these contacts must be such that the assertion of jurisdiction comports with "'traditional notions of fair play and substantial justice.'" *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)).

The Minnesota long-arm statute, Minn.Stat. § 543.19 (1994), permits courts to assert jurisdiction over defendants to the extent that federal constitutional requirements of due process will allow. *Valspar Corp. v. Lukken Color Corp.,* 495 N.W.2d 408, 410 (Minn.1992). If the personal jurisdiction requirements of the federal constitution are met, the requirements of the long-arm statute will necessarily also be met. *Id.* at 411. Therefore, we need only consider whether it is consistent with federal constitutional requirements of due process for a

claim arising or existing by reason of * * * 1. Accidents occurring outside Canada and the United States of America."

**2.** During his deposition, L.B. Bowden, Canadian General's Executive Vice–President, acknowledged that policies issued in 1960 typically covered a term of three years. Bowden further stated that he would expect the prior policy,

which was allegedly renewed by the discovered policy, to cover the three years preceding the discovered 1960 policy. During another deposition, Robert W. Ross, Canadian General's former Vice–President in Toronto, stated that he expected the prior policy probably would have been the "same kind" as the found policy that replaced it.

Minnesota court to assert personal jurisdiction over Canadian General. *Id.*

The Due Process clause of the Fourteenth Amendment limits the power of a state court to exert personal jurisdiction over a nonresident defendant. *Kulko v. Superior Court of California,* 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978). To satisfy federal due process, a plaintiff must demonstrate that " 'the defendant purposefully established 'minimum contacts' in the forum State.' " [3] *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158). Once the plaintiff establishes that the defendant has minimum contacts with the forum, the defendant can still defeat jurisdiction if it can show that the exercise of jurisdiction is not reasonable. *See Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987); *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184–85.

The minimum contacts requirement may be satisfied in two different contexts. These two contexts are referred to as "general" personal jurisdiction and "specific" personal jurisdiction. *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984); *Valspar Corp.,* 495 N.W.2d at 411.

## II.

General personal jurisdiction exists when a nonresident defendant's contacts with the forum state are so substantial and are of such a nature that the state may assert jurisdiction over the defendant even for causes of action unrelated to the defendant's contacts with the forum state. *See Valspar Corp.,* 495 N.W.2d at 411. Before a court may constitutionally assert general jurisdiction over a nonresident defendant, the defendant must have "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales,* 466 U.S. at 415–16, 104 S.Ct. at 1872–73; *Real Properties, Inc. v. Mission Ins. Co.,* 427 N.W.2d 665, 669 (Minn.1988).

Domtar contends that Canadian General is subject to general personal jurisdiction in Minnesota. To support its contention, Domtar primarily relies on Canadian General's involvement in an unrelated construction project in Minnesota and on its involvement in litigation attending that project. We conclude that Canadian General's activities within Minnesota were insufficient to constitute "continuous and systematic" activity. Consequently, Canadian General's involvement in the construction project does not support general personal jurisdiction over Canadian General in a Minnesota court.

## III.

Domtar's case necessarily depends on the presence or absence of specific personal jurisdiction. Specific personal jurisdiction exists when the defendant's contacts with the forum state are limited, yet connected with the plaintiff's claim such that the claim arises out of or relates to the defendant's contacts with the forum. *See Burger King,* 471 U.S. at 472, 105 S.Ct. at 2181–82; *Helicopteros Nacionales,* 466 U.S. at 414, 104

3. Domtar's brief discusses Canadian General's various contacts with the United States in general, as opposed to its contacts with the specific forum state of Minnesota. This discussion is too general to be relevant in determining whether Canadian General has sufficient minimum contacts with Minnesota. The foreign defendant's relevant contacts are with the forum state, not the United States in general. *Cf. United Elec. Workers v. 163 Pleasant Street Corp.,* 960 F.2d 1080, 1085 (1st Cir.1992) (explaining that when a federal court's subject matter jurisdiction is founded upon a federal question, the Due Process Clause of the Fifth Amendment, rather than the Fourteenth Amendment, establishes the constitutional limits of the court's power to assert personal jurisdiction over a foreign defendant, and under the Fifth Amendment, that power is geographically expanded, authorizing personal jurisdiction over alien defendants in federal court based on minimum contacts with the United States, rather than on the contacts between the defendant and the State in which the federal court sits). *See also, Asahi Metal Indus.,* 480 U.S. at 113, 107 S.Ct. at 1032–33 (stating "We have no occasion here to determine whether Congress could, consistent with the Due Process Clause of the Fifth Amendment, authorize federal court personal jurisdiction over alien defendants based on the aggregate of *national* contacts, rather than on the contacts between the defendant and the State in which the federal court sits.") (emphasis in original) (citations omitted).

S.Ct. at 1872. A single contact with the forum can be sufficient if the cause of action arises out of that contact. *McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

When a claim arises out of a contract that has a "substantial connection" with the forum state, specific jurisdiction exists. *Id.* at 223, 78 S.Ct. at 201. In determining whether a substantial connection exists between the contract and the forum state, the United States Supreme Court has emphasized that the formation of a contract is an intermediate step in the process of negotiation and future performance. *Burger King*, 471 U.S. at 479, 105 S.Ct. at 2185–86. In *Burger King Corp. v. Rudzewicz*, the Court explained

> [A] "contract" is "ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction." * * * It is these factors—prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing—that must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum.

*Id.* (quoting *Hoopeston Canning Co. v. Cullen*, 318 U.S. 313, 317, 63 S.Ct. 602, 605, 87 L.Ed. 777 (1943)).

Domtar urges this court to conclude that Minnesota courts may assert specific personal jurisdiction over Canadian General based on its alleged agreement to insure Domtar for liability arising out of its Minnesota tar manufacturing operations. Several courts have concluded that a court may assert specific personal jurisdiction over a nonresident insurer when (1) the insurer knows of its insured's contact with the forum; (2) the risk insured against transpires in the forum state; and (3) the forum state is not excluded from the geographic coverage of the insurance policy.[4]

For example, in *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, the Ninth Circuit Court of Appeals held that a Montana court had specific personal jurisdiction over a Canadian insurer whose Canadian insured was involved in a Montana car accident. 907 F.2d 911, 913 (9th Cir.1990). In that case, the dispute resulted from a single-vehicle accident that occurred in Montana. The owner of the car, John Kraemer, and his wife Claudia, resided in Alberta, Canada at the time of the accident. The Kraemers were insured by Portage La Prairie Insurance Company, a Canadian insurer. At the time of the accident, the Kraemers were passengers in their own car, and Lisa Lorango was driving the car with their consent. Lorango, the driver, was insured by Farmers Insurance, a California insurer. Claudia Kraemer was injured in the accident. Although both Farmers and Portage were purportedly obligated to provide liability coverage, only Farmers provided coverage to Claudia Kraemer. Farmers, purportedly an excess insurer, brought an action against Portage, as primary insurer, in Montana federal district court seeking declaratory relief and damages for Portage's refusal to reimburse Farmers.

4. The "territory-of-coverage rule" generally provides that, in exercising specific personal jurisdiction over nonresident insurance companies, courts infer the necessary contact from policy language defining the territory of coverage. William C. Hoffman, "Personal Jurisdiction Over Alien Insurance Companies: The Territory-of-Coverage Rule," 26 *Tort & Ins. L.J.* 703 (1991). In short, if the geographic scope of the coverage includes the forum state, then the court, having jurisdiction over the insured, may exercise jurisdiction over the insurer as well. *Id.* Hoffman's article raises, but fails to answer, the question of whether the territory-of-coverage rule requires that the event generating the claim against the insurer occur in the forum state. *See id.* at 715. It is difficult to understand how a court could conclude that specific jurisdiction over a nonresi-

dent defendant exists when the forum is not the situs of the injury, because in such a case, the plaintiff's claim would not arise from or relate to the defendant's forum contacts. *See, e.g., Travelers Indem. Co. v. Calvert Fire Ins. Co.*, 798 F.2d 826 (5th Cir.1986) (holding in case where vessel damage occurred in international waters off the Panama Canal, foreign insurance company that provided liability insurance on vessel lacked sufficient minimum contacts with Louisiana forum to be subject to personal jurisdiction in the forum). Nevertheless, in the present case, because the allegedly covered risk transpired in Minnesota, we need not address the issue of whether a mere territory of coverage clause, without more, is constitutionally sufficient to support personal jurisdiction over a nonresident insurer.

Because Portage's insurance policy coverage extended into Montana, and because an insured event resulted in litigation in Montana, the court concluded that Portage had purposefully availed itself of the privilege of conducting activities in the forum state. *Id.*, at 913. The court reasoned that personal jurisdiction over Portage derived from its contractual obligation to indemnify and defend its insured, a duty that foreseeably required litigation in any forum where the insured risk traveled. *Id.* at 914.

The court explained that the Supreme Court's decision in *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), did not preclude the exercise of personal jurisdiction over an insurer whose only contact with the forum state is the issuance of an insurance policy covering an accident that occurred in the forum state. *Farmers Ins. Exch.*, 907 F.2d at 913. In *World–Wide Volkswagen*, the plaintiffs, who had purchased an automobile from a New York dealer and distributor, sued the dealer and distributor in Oklahoma after being involved in a collision in Oklahoma. *Id.* at 288, 100 S.Ct. at 562–63. The Supreme Court held that the mobility of the automobile and the defendants' ability to foresee its movement to other states were not enough to satisfy the requirements of due process. *Id.* at 297–98, 100 S.Ct. at 567–68. Nothing about the defendants' conduct indicated that it was willing to be called into court in the foreign state. *Id.* at 298, 100 S.Ct. at 567–68. The defendants' only connection with Oklahoma was the result of the plaintiffs' unilateral act of driving the car there. *Id.* at 295, 100 S.Ct. at 566. Thus, the Oklahoma court could not constitutionally assert personal jurisdiction over the nonresident defendants. *Id.* at 299, 100 S.Ct. at 568.

Unlike the automobile sellers in *World–Wide Volkswagen*, the court in *Farmers Ins. Exch.* reasoned, liability insurers contract to defend and indemnify the insured for claims that will foreseeably result in litigation in foreign states. 907 F.2d at 914. Thus, litigation requiring the presence of the insurer is not only foreseeable, but it is purposefully contracted for by the insurer. *Id.* Moreover, unlike a product seller or distributor, an insurer has the contractual ability to control the territory into which its "product"— the indemnification and defense of claims— will travel. *Id.* If Portage wished to avoid suit in Montana, it could have excluded that state from the policy territory defined in the policy. *Id.* Because Portage controlled its own amenability to suit, the court held that Portage purposefully availed itself of the Montana forum when it contracted to indemnify and defend against claims arising there. *Id.*[5]

The approach of asserting personal jurisdiction over insurance companies exemplified by *Farmers Ins. Exch.* faithfully observes the Supreme Court's emphasis in contract cases on the future consequences contemplated by the parties when executing the contract. In the general liability insurance context, the parties contemplate that the insurer will defend and indemnify the insured. Further, the defense is presumably contemplated to occur where the insured is sued.

In cases following the approach exemplified by *Farmers Ins. Exch.*, the insurer must know of its insured's contact with the forum state before the court will conclude that the insurer purposefully established

5. *Accord Payne v. Motorists' Mut. Ins. Cos.*, 4 F.3d 452 (6th Cir.1993) (holding, in action brought by motorists injured in accident occurring in Tennessee, suing as third-party beneficiaries of insured's insurance contract, Tennessee court could assert personal jurisdiction over Ohio insurer); *Rossman v. State Farm Mut. Auto. Ins. Co.*, 832 F.2d 282 (4th Cir.1987) (holding Virginia court could assert personal jurisdiction over Illinois insurance company based on Illinois insured's accident in Virginia); *Szalay v. Handcock*, 307 Ark. 232, 819 S.W.2d 684 (1991) (following *Farmers Ins. Exch.* and *Rossman*, the court held that an Arkansas court could assert personal jurisdiction over nonresident insurance company based solely on insurance company's obligation to provide coverage for claims arising in Arkansas, a state within the policy's territorial coverage); *N.J. Auto. Full Ins. Underwriting Ass'n v. Independent Fire Ins. Co.*, 253 N.J.Super. 75, 600 A.2d 1243 (Ch.Div.1991) (holding contractual commitment by nonresident insurer to defend its insured against claims arising out of accidents occurring in New Jersey constituted sufficient contact with New Jersey to subject insurer to suit in New Jersey when its insured was involved in accident in New Jersey and that accident generated third-party claim).

minimum contacts with the forum state. In 1956, at the earliest, Canadian General issued its first liability policy purportedly covering Domtar's operations in Minnesota. This was 7 to 8 years after Domtar's subsidiary ceased manufacturing operations at the tar plant and two years after Domtar's subsidiary sold its part of the Site. Thus, Canadian General maintains that it did not know of Domtar's Duluth tar manufacturing operations at the time it first insured Domtar.

In evaluating whether Canadian General knew of Domtar's Duluth tar manufacturing operation, we note that an insurer has a commercial interest in knowing how, and to what degree, its insured has contacts with the forum state. *See Eli Lilly and Co. v. Home Ins. Co.*, 794 F.2d 710, 721 (D.C.Cir. 1986) (stating that insurers have a commercial interest in knowing where an insured risk is located so that the insurer can accurately estimate the liability risks and appropriately adjust the policy premium) *cert. denied, Falcon Ins. Co. v. Eli Lilly and Co.*, 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990 (1987). To fix an appropriate premium, an insurer usually requires information regarding the insured's activities. *Id.* at 720–21.

Canadian General's contemporary underwriting practice involves ascertaining the extent of a prospective insured's activities in the United States and then deciding whether to accept those risks and what premium to charge. Since 1984, all risks located in the United States have required approval before Canadian General will issue an insurance policy covering the United States risk. Canadian General's Casualty Manager recalls only two instances since 1984 in which Canadian General knowingly covered an insured's operations in the United States.

Domtar's brief and many exhibits in the record discuss Domtar's business operations throughout the United States during the alleged policy period. Canadian General's conservative approach to insuring United States risks supports the conclusion that Canadian

General would have sought to discover the extent of Domtar's operations in the United States before issuing a general liability policy to Domtar. Furthermore, as the court of appeals indicated, the possibility that a manufacturer, such as Domtar, could be liable for groundwater contamination and responsible for cleaning up the pollution has been recognized in Minnesota since the late 1800's. *Domtar, Inc.*, 518 N.W.2d at 62 (citing *Minnesota Mining & Mfg. v. Travelers Indem. Co.*, 457 N.W.2d 175, 183 (Minn.1990)). Thus, before issuing a general liability policy to Domtar, Canadian General presumably would have sought to discover the extent and nature of Domtar's past operations in the United States and, thereby, would have discovered Domtar's former ownership of the tar manufacturing plant in Duluth.[6]

Canadian General has not retained any of Domtar's applications for insurance coverage, any of the policies issued to Domtar, or any of the underwriting materials presumably gathered or generated at the time it issued the policies to Domtar. Nevertheless, Canadian General's Executive Vice–President speculated that the 1960 underwriting file on Domtar would likely have included a description of Domtar's operations, an estimate of Domtar's sales by type of operation, the location of Domtar's operations, a description of Domtar's prior claims history, inspection reports pertaining to Domtar's operations and possibly a breakdown of Domtar's Canadian and U.S. sales.

Based on the information likely contained in Canadian General's 1960 underwriting file, we conclude that Canadian General constructively knew that Domtar had formerly operated a tar manufacturing facility in Duluth. By deciding to issue a general liability policy allegedly insuring Domtar against liability arising from its Duluth tar manufacturing operation, Canadian General purposefully established the required minimum contacts with Minnesota. Furthermore, Minnesota is the situs of the accident creating liability that

**6.** *Domtar's* business operations in Minnesota are only indirectly relevant to determining whether *Canadian General* has sufficient minimum contacts in Minnesota. That is, they are relevant only in evaluating whether Canadian General

knew it was insuring Domtar's Minnesota tar manufacturing operations and, thereby, purposefully established minimum contacts in Minnesota.

Canadian General purportedly agreed to defend Domtar against.

For these reasons, we hold that Domtar's coverage claim against Canadian General arises out of or relates to Canadian General's minimum contacts with Minnesota, thereby supporting a Minnesota court's assertion of specific personal jurisdiction over Canadian General in the present case.

## IV.

Finally, we must determine whether a Minnesota court's assertion of specific personal jurisdiction over Canadian General would comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. at 320, 66 S.Ct. at 160. The concept of "fair play and substantial justice" can defeat the reasonableness of jurisdiction even if the defendant has purposefully engaged in forum activities. *Asahi Metal Indus.*, 480 U.S. at 116, 107 S.Ct. at 1034; *Burger King*, 471 U.S. at 477–78, 105 S.Ct. at 2184–85. The defendant bears the burden of presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2185.

In deciding whether the exercise of jurisdiction is reasonable, courts consider factors such as the burden on the defendant in litigating in the forum state, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184–85; *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. at 564–65. The unique burdens placed upon a foreign defendant who must defend itself in a foreign legal system should have significant weight in assessing the reasonableness of stretching personal jurisdiction over national borders. *Asahi Metal Indus.*, 480 U.S. at 114, 107 S.Ct. at 1033.

The record indicates that Canadian General is not unduly unfamiliar with the American legal system. In addition, because the legal system is generally uniform throughout the United States, Canadian General's litigation throughout the United States supports the reasonableness of retaining jurisdiction in Minnesota.

Because Domtar is a Canadian corporation, the present case is not one in which the State of Minnesota's interest derives from the desire to provide a forum for its resident plaintiff. Nevertheless, this case is unlike the typical case involving two nonresidents because the alleged environmental contamination occurred in Minnesota. Minnesota's interests in conserving natural resources, decreasing environmental pollution and protecting the environment are "unquestionably * * * state interests of great magnitude." *Can Manufacturers Inst., Inc. v. State*, 289 N.W.2d 416, 420 (Minn.1979); *see also* Minnesota Environmental Rights Act, Minn. Stat. § 116B.01 (1994) (proclaiming "it is in the public interest to * * * protect air, water, land and other natural resources located within the state from pollution, impairment, or destruction."). Because efforts to clean up contaminated sites are expensive, the state has a further interest in making sure the costs are paid by those responsible for the contamination.

Canadian General is one of three alleged primary liability insurers for the Domtar tar manufacturing site. Without Canadian General's presence in the present litigation, either Domtar or other insurers will be required to seek contribution from Canadian General in Canada, resulting in piecemeal and fragmented litigation. Moreover, the evidence of contamination, the effectiveness of remediation efforts and the expert witnesses, many of whom will presumably be from the MPCA, are all located in Minnesota. Thus, efficient resolution of this case favors retaining jurisdiction in Minnesota.

Considering the relevant factors, we conclude that Canadian General has failed to rebut the presumption of reasonableness, and we hold that subjecting Canadian General to specific personal jurisdiction in Minne-

sota comports with traditional notions of fair play and substantial justice.

Affirmed.

COYNE, GARDEBRING and STRINGER, JJ., took no part in the consideration or decision of this case.