**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, as a servicing agent of the Minnesota Automobile Assigned Claims Bureau, Respondent,**

v.

**TENNESSEE FARMERS MUTUAL INSURANCE COMPANY, Appellant.**

No. C3–01–1870.

Court of Appeals of Minnesota.

May 28, 2002.

170

Timothy J. Eiden, Melissa A. Harritt, Hansen, Dordell, Bradt, Odlaug & Bradt, P.L.L.P., St. Paul, for respondent.

James P. Young, Lundquist Law Offices, P.A., Minneapolis, for appellant.

Considered and decided by RANDALL, Presiding Judge, KLAPHAKE, Judge, and PORITSKY, Judge.

## OPINION

PORITSKY, Judge.*

A motor vehicle owned by Tennessee residents and insured by appellant Tennessee Farmers Mutual Insurance Company ("Tennessee Farmers") was involved in an accident in Minnesota. Two occupants of the Tennessee vehicle were Minnesota residents. Respondent State Farm, as a servicing agent for the Minnesota assigned-claims bureau, paid Minnesota no-fault benefits to the Minnesota occupants, then sought reimbursement from Tennessee Farmers for those no-fault expenses on the ground that Tennessee Farmers had contractually agreed in its policy to provide Minnesota no-fault coverage. The district court granted State Farm's motion for summary judgment. Tennessee Farmers appeals from the judgment, claiming (1) Minnesota courts have no personal jurisdiction over it; and (2) it has no contractual obligation to provide Minnesota no-fault benefits.

## FACTS

On October 8, 1995, a vehicle driven by James Chase and owned by his parents was rear-ended by another vehicle in Minneapolis. James Chase and his parents are residents of Tennessee. Appellant Tennessee Farmers insured the Chase vehicle. Tennessee Farmers is a company incorporated in the state of Tennessee. It has no agents in Minnesota, does not sell any insurance policies in Minnesota, and is not licensed to do business in Minnesota. The Tennessee Farmers policy included a standard territory-of-coverage clause that provided, in relevant part, that the policy coverage applies "only to accidents or loss-es that occur * * * in the United States of America * * * or in Canada."

Two Minnesota residents were passengers in the Tennessee vehicle at the time of the accident. The Minnesota occupants made application for Minnesota no-fault benefits under the Tennessee Farmers policy covering the Chase vehicle, but Tennessee Farmers denied the claim. As there was no other source of Minnesota no-fault coverage, the Minnesota occupants applied for no-fault benefits from the Minnesota Automobile Assigned Claims Bureau. The claim was assigned to respondent State Farm, a servicing agent for the assigned-claims bureau, who paid no-fault benefits to the Minnesota residents.

Thereafter, State Farm commenced an action against Tennessee Farmers for reimbursement of no-fault benefits paid to the Minnesota occupants. State Farm claimed that Tennessee Farmers had contractually agreed to provide Minnesota no-fault coverage to the Minnesota occupants through a conformity clause in its policy, and, under the Minnesota no-fault priority provisions, Minn.Stat. § 65B.47, this no-fault coverage would be the primary source of no-fault coverage for the Minnesota occupants.[1]

Tennessee Farmers moved to dismiss the complaint for lack of personal jurisdiction. The trial court denied the motion. State Farm then moved for summary judgment on the coverage issue. Tennessee Farmers opposed the motion, asserting that the conformity clause applied only to liability coverage. The trial court granted summary judgment in favor of State Farm, concluding that, based on the con-

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

1. *See* Minn.Stat. § 65B.47, subd. 6 (2000) (permitting no-fault carrier to seek reimburse-ment from another carrier who has first priority to pay); Minn.Stat. § 65B.64, subd. 2 (2000) (granting expanded subrogation rights to assigned-claims bureau servicing insurer).

formity clause, Tennessee Farmers agreed to provide the compulsory no-fault coverage for accidents occurring in Minnesota. The trial court entered judgment against Tennessee Farmers for the no-fault benefits and statutory interest. Tennessee Farmers appeals both the finding of jurisdiction and the finding of coverage.

## ISSUES

I.  Did the trial court err in finding personal jurisdiction over a nonresident auto insurer for a first-party claim, when the policy states that coverage applies "to accidents or losses that occur in the United States" and the claim arose out of a Minnesota accident?

II.  Did the trial court err in concluding that Tennessee Farmers contractually agreed to provide Minnesota no-fault benefits?

## ANALYSIS

### I.

"The determination of whether personal jurisdiction exists is a question of law." *V.H. v. Estate of Birnbaum,* 543 N.W.2d 649, 653 (Minn.1996) (citation omitted).

The Due Process Clause limits the power of a state court to exercise jurisdiction over a nonresident defendant. *Domtar v. Niagara Fire Ins. Co.,* 533 N.W.2d 25, 30 (Minn.1995) (citing *Kulko v. Superior Court of California,* 436 U.S. 84, 91, 98 S.Ct. 1690, 1696, 56 L.Ed.2d 132 (1978)). State courts may constitutionally exercise personal jurisdiction over nonresident defendants who have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct.

154, 158, 90 L.Ed. 95 (1945) (quotation omitted).

Minnesota has enacted a long-arm statute to govern the exercise of jurisdiction over nonresident defendants; the long-arm statute is intended to permit Minnesota courts to exercise jurisdiction over such defendants to the full extent that federal constitutional requirements of due process will allow. *Valspar Corp. v. Lukken Color Corp.,* 495 N.W.2d 408, 410 (Minn.1992); *see* Minn.Stat. § 543.19 (2000) (Minnesota long-arm statute). Thus, if the requirements of the federal constitution are met, the requirements of the Minnesota long-arm statute will necessarily be met. *Valspar,* 495 N.W.2d at 411.

Jurisdiction may be either general or specific. General jurisdiction is available if the defendant has "continuous and systematic" contacts with the forum state; if so, the nonresident defendant may be sued in the forum state on almost any claim, even when the claim does not arise out of the defendant's activities in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). Here, the record contains no information that Tennessee Farmers had continuous or systemic contacts with Minnesota; instead, the only contact supported in the record is an accident occurring in Minnesota involving a motor vehicle owned by Tennessee residents and insured by Tennessee Farmers. Thus, the record does not support the exercise of general jurisdiction.

With regard to specific jurisdiction, the minimum-contacts inquiry focuses on the relationship among the defendant, the forum, and the litigation. *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790

(1984). The question is whether the nonresident defendant purposefully directed its activities toward the forum state and whether the underlying claim arose out of those activities. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985). The nonresident defendant, through its conduct and connection with the forum state, should reasonably anticipate being haled into the court in that state. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 296–98, 100 S.Ct. 559, 566–67, 62 L.Ed.2d 490 (1980). And even if a showing of minimum contacts has been made, we must also assess whether the exercise of jurisdiction is "reasonable," that is, whether it comports with traditional notions of fair play and substantial justice. *Asahi Metal Indus. Co. v. Superior Court of California,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987).

■ Applying these concepts, we conclude that Tennessee Farmers has sufficient minimum contacts with Minnesota to sustain an exercise of specific jurisdiction and that the exercise of jurisdiction is reasonable. First, Tennessee Farmers purposefully directed its activities toward Minnesota by issuing an insurance policy with a broad territory-of-coverage clause that extends to accidents occurring anywhere in the United States, including Minnesota. The present case, which is a contractual claim under the policy arising out of a Minnesota accident, falls squarely within the geographical limits of this territory-of-coverage clause. Such a result is consistent with our prior decision in *Payne v. Mut. Fire and Auto. Ins. Co.,* 381 N.W.2d 523, 525–26 (Minn.App.1986), *review denied* (Minn. Mar. 27, 1996). The *Payne* court reasoned that an auto insurer who purposefully agrees to insure travel within a specified area that includes part of the forum state has sufficient minimum contacts with the forum state. *Id.* (concluding that Iowa insurer who contractually agreed to defend its insured for accidents occurring within a limited area of Minnesota was subject to personal jurisdiction in Minnesota, even for claims arising from an accident that occurred outside the contractually-limited area).

Tennessee Farmers argues the reasoning in *Payne* is limited to *liability* claims in which an insurer has contractually agreed to defend and indemnify its insured for accidents occurring in other states, whereas the present case involves a *first-party* claim for Minnesota no-fault benefits asserted directly against the nonresident auto insurer. *See United Farm Bureau Mut. Ins. Co. v. United States Fid. & Guar. Co.,* 501 Pa. 646, 462 A.2d 1300, 1306–07 (1983) (holding policy provisions insufficient to create minimum contacts for lawsuit seeking to impose no-fault coverage on nonresident insurer); *Batton v. Tennessee Farmers Mut. Ins. Co.,* 153 Ariz. 268, 736 P.2d 2, 6–8 (1987) (no minimum contacts for lawsuit seeking benefits under the med-pay portion of the auto policy).

We disagree. The broad territory-of-coverage clause in the Tennessee Farmers policy is found in the general policy provisions and does not distinguish between first-party and third-party (i.e., liability) claims. In addition, the first-party claims asserted in this litigation and third-party claims asserted indirectly against the insurer both stem from a similar obligation, that is, from a contractual agreement to provide various coverages. In fact, this first-party claim may present an even stronger case for finding minimum contacts, because this first-party claim is based upon an alleged direct contractual obligation to the Minnesota occupants under the policy provisions, whereas a third-

party claim is based upon contractual obligations to the insured.

Second, we find that Tennessee Farmers could reasonably anticipate being haled into Minnesota courts, by virtue of its policy provisions and the inherently mobile nature of the motor vehicle. The broad territory-of-coverage clause contemplates that the motor vehicle may travel outside the state of Tennessee. In addition, the conformity clause at issue in the coverage determination, discussed below, also specifically contemplates out-of-state travel.

We also believe that this exercise of jurisdiction is reasonable. This inquiry includes an evaluation of five factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining an efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Asahi,* 480 U.S. at 113, 107 S.Ct. at 1033. We believe that the plaintiff's interest in resolving this coverage issue in Minnesota outweighs the burden on Tennessee Farmers, an insurer with greater resources. We also believe that Minnesota and the interstate judicial system share the interest of resolving all claims, both first-party and third-party, in the state where the accident occurred.

This finding of jurisdiction is consistent with a national trend finding minimum contacts between auto insurers and the forum state based upon territory-of-coverage clauses. *See Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 913 (9th Cir.1990) (finding minimum contacts where insurer had purposefully connected itself to the forum state by agreeing to defend its insured throughout the United States); *Rossman v. Stat Farm Mut. Auto. Ins. Co.,* 832 F.2d 282,

286–87 (4th Cir.1987) (accord); *see also* Tamara S. Brandt, *OMI Holdings v. Royal Insurance: Applying the Minimum Contacts Test to Territory of Coverage Clauses,* 74 Notre Dame L.Rev. 1311, 1330–32 (May 1999) (discussing trend finding minimum contacts between nonresident liability carriers and forum state based upon territory-of-coverage clauses).

While the Minnesota Supreme Court has never addressed this jurisdictional issue involving nonresident auto insurers, it did conclude that a nonresident comprehensive-general-liability (CGL) insurer who agreed to defend its insured for accidents occurring in "Canada and the United States of America" had sufficient contacts with Minnesota for the exercise of personal jurisdiction in a coverage dispute claim. *Domtar,* 533 N.W.2d at 31–32 (citing *Farmers Exch.,* 907 F.2d at 913–14). In finding jurisdiction, the Court relied upon the broad territory-of-coverage clause coupled with the fact that the CGL insurer had constructive knowledge that its insured, Domtar, had formerly operated a tar manufacturing plant in the state of Minnesota. *Domtar,* 533 N.W.2d at 33–34. Our decision in the present case is consistent with the reasoning in *Domtar:* Tennessee Farmers' policy provisions that specifically contemplate out-of-state travel, coupled with the inherently mobile nature of the motor vehicle, is sufficient to charge Tennessee Farmers with constructive knowledge that the insured motor vehicle may travel to Minnesota and, while in that state, be involved in an accident.

Tennessee Farmers relies on this court's decision in *Zimmerman v. American Inter–Insurance Exch.,* 386 N.W.2d 825 (Minn.App.1986), *review denied* (Minn. July 31, 1986), in claiming lack of jurisdiction. *Zimmerman* involved a claim for Minnesota underinsured benefits against an Iowa insurer who did no business in

Minnesota. This court found insufficient minimum contacts. There is a significant distinction between the present case and *Zimmerman*. Here, as we have noted, the territory-of-coverage clause subjects the insurer to the jurisdiction of Minnesota courts. In *Zimmerman*, by contrast, this court determined that there was nothing in the policy that subjected the insurer to Minnesota jurisdiction. *Id.* at 827 ("no contacts were created by the language of the policy.")

For the reasons set out above, we affirm the trial court's finding of jurisdiction.

## II.

▇ The next issue is whether Tennessee Farmers contractually agreed to provide Minnesota no-fault coverage under its policy provisions.

▇ The interpretation of an insurance contract is a question of law as applied to the facts presented. *Meister v. Western Nat'l Mut. Ins. Co.*, 479 N.W.2d 372, 376 (Minn.1992). General principles of contract interpretation apply to insurance policies. *St. Paul Sch. Dist. No. 625 v. Columbia Transit Corp.*, 321 N.W.2d 41, 45 (Minn.1982). When insurance policy language is clear and unambiguous, "the language used must be given its usual and accepted meaning." *Bobich v. Oja*, 258 Minn. 287, 294, 104 N.W.2d 19, 24 (1960) (citation omitted).

> The intent of the contracting parties is to be ascertained, not by a process of dissection in which words or phrases are isolated from their context, but rather from a process of synthesis in which the words and phrases are given a meaning

in accordance with the obvious purpose of the insurance contract as a whole. *Cement, Sand & Gravel Co. v. Agric. Ins. Co.*, 225 Minn. 211, 216, 30 N.W.2d 341, 345 (1947).

State Farm claims that Tennessee Farmers has contractually undertaken to provide Minnesota no-fault benefits under the following conformity clause:

> If an accident to which this policy applies occurs in any state or province other than the state in which **your covered auto** is principally garaged, we will provide limits of liability under this Part A and B for that accident as follows:
>
> 1. If the state or province has:
>
>    a. a financial responsibility law specifying minimum limits of liability for bodily injury or property damage higher than the limits shown in the Declarations, we will provide the higher specified minimum limits;
>
>    b. a compulsory insurance law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, we will provide the required minimum amounts and types of coverage, or the amounts and types of coverage provided in this policy, whichever is greater.

State Farm claims that no-fault coverage is a required coverage in Minnesota, even for nonresidents, *see* Minn.Stat. § 65B.50, subd. 2, and that Tennessee Farmers has contractually agreed to provide this coverage under the conformity clause.[2] Tennessee Farmers maintains

---

**2.** State Farm does not argue that Tennessee Farmers has a *statutory* duty to provide no-fault coverage, or could it do so. *See Burgie v. League General Ins., Co.*, 355 N.W.2d 466, 469–70 (Minn.App.1984), *review denied* (Minn. Feb.16, 1985) (holding that section 65B.50,

subdivisions 1 and 2 (1982) requiring liability and no-fault coverage while out-of-state vehicles are operated in Minnesota applies only to insurers that are licensed to do business in Minnesota); *see also* Smetak & vanVliet,

that the conformity clause applies only to liability coverage. We agree. First, the placement of the conformity clause in the policy supports the conclusion that it only applies to liability (i.e., fault-based) coverage. As with most standard auto policies, the Tennessee Farmers policy includes a declarations page, various endorsements to the standard policy, and a table of contents for the standard policy. In the table of contents, as well as in the body of the policy, the policy provisions are divided into general provisions (such as the definitions, the territory-of-coverage clause, and duties of the insured) and provisions specific to the various coverages (liability coverage, medical payments coverage, uninsured motorist coverage, etc.). The conformity clause upon which State Farm relies is clearly located in the section of the policy dealing with liability coverage. Liability coverage pays for damages "for which any covered person becomes legally liable to pay because of an accident." It would not include any first-party claims, including Minnesota no-fault.

Second, the language of the conformity clause itself ties the clause to the liability section. The conformity clause is found under the heading "Limit of Liability". The plain language of the prefatory section states "we will provide limits of *liability* under this Part A and B." (Emphasis added.) Part A and B are fault-based coverages for claims against the insured for bodily injury and property damage. Finally, the use of the terms "financial responsibility law" and "compulsory insurance law" reflect the two types of liability coverage used in the various states. *See Sanchez Estate v. Colonial Penn Ins.*, 367 Pa.Super. 198, 532 A.2d 857, 861 (1987) (finding plain language demonstrated purpose of conformity clause was to provide adequate liability coverage to meet requirements of "financial responsibility" and "compulsory insurance" laws of other states; thus, clause did not extend to another state's no-fault coverage); *see also* Smetak & van Vliet, *Minnesota Motor Vehicle Insurance Manual* 248–250 (3d ed.2000) (explaining difference between "financial responsibility" law and "compulsory insurance" law in context of liability coverage).

State Farm further argues that the conformity clause applies to no-fault coverage because the language refers to "minimum amounts and *types* of coverage". State Farm asserts that because the term "types" is plural, the conformity clause must refer to coverages other than liability. We disagree. Liability coverage itself encompasses two types of coverage: coverage for claims for bodily injury (Part A) and coverage for claims for property damage (Part B), and the word *types* is plural to cover both bodily injury and property damage.

In short, the language and context of the policy provisions demonstrate that Tennessee Farmers did not contractually agree to provide Minnesota no-fault coverage for this Minnesota accident. Therefore, we reverse the district court's finding of coverage.

## DECISION

Minnesota courts may constitutionally exercise personal jurisdiction over Tennessee Farmers. But Tennessee Farmers is not contractually obligated to provide Minnesota no-fault coverage to the Minnesota occupants or their subrogee, State Farm. We reverse the trial court's grant of summary judgment in favor of State Farm and remand with directions to enter judgment in favor of Tennessee Farmers.

*Minnesota Motor Vehicle Insurance Manual* 72–77 (3d ed.2000).

Affirmed in part, reversed in part, and remanded.