REYES, Judge *713 In this appeal from the district court's denial of appellant Ford Motor Company's (Ford) motion to dismiss for lack of jurisdiction, Ford argues that Minnesota does not have specific personal jurisdiction over it because respondent Adam Bandemer's injury did not arise from Ford's contacts with Minnesota. We affirm.
FACTS
Bandemer, a Minnesota resident, sustained a brain injury in Minnesota while riding in the front passenger seat of a 1994 Ford Crown Victoria (the Crown Victoria) in January 2015. The Crown Victoria was registered in Minnesota. Co-defendant Eric Hanson, who was driving the Crown Victoria at the time of the accident, rear-ended a snow plow. The Crown Victoria went into a ditch, and the front passenger airbag failed to deploy. Bandemer's injury was treated in Minnesota. Bandemer sued Ford in Todd County, claiming the Crown Victoria was defectively designed, manufactured, and marketed.
Ford moved to dismiss for lack of personal jurisdiction. Ford argued that Minnesota lacks specific personal jurisdiction over Ford and also does not have consent-based jurisdiction in light of the United States Supreme Court decision in Daimler AG v. Bauman , 571 U.S. 117, 134 S.Ct. 746, 187 L.Ed.2d 624 (2014).[1]
In its discovery responses, Ford admitted that it engaged in substantial marketing activities in Minnesota. After conducting a hearing on Ford's motion to dismiss, the district court denied Ford's motion, finding that Ford consented to jurisdiction by registering to do business in Minnesota under Minn. Stat. § 303.13 (2016), and designating an agent in Minnesota for service. This appeal follows.
ISSUES
Did the district court err in denying Ford's motion to dismiss for lack of personal jurisdiction?
ANALYSIS
Ford argues that the district court did not have specific personal jurisdiction over it because the Crown Victoria was not assembled, designed, serviced, or originally sold by Ford in Minnesota. We are not persuaded.
"Jurisdiction is a question of law that [appellate courts] review de novo." In re Comm'r of Pub. Safety , 735 N.W.2d 706, 710 (Minn. 2007) (quotation omitted). When a defendant challenges personal jurisdiction, the plaintiff has the burden of proof to make a prima facie showing that jurisdiction exists.
*714 Juelich v. Yamazaki Mazak Optonics Corp. , 682 N.W.2d 565, 569-70 (Minn. 2004). At the pretrial stage, plaintiff's allegations and supporting evidence will be taken as true for the purposes of determining whether personal jurisdiction exists. Id. at 570 ; Hardrives, Inc. v. City of LaCrosse , 307 Minn. 290, 293, 240 N.W.2d 814, 816 (1976). Any doubts about jurisdiction should be "resolved in favor of retention of jurisdiction." Hardrives, Inc. , 307 Minn. at 296, 240 N.W.2d at 818.
Minnesota courts can exercise personal jurisdiction over a foreign corporation when Minnesota's long-arm statute authorizes it and the exercise of such jurisdiction does not violate the due-process requirement of the United States Constitution. Domtar, Inc. v.Niagara Fire Ins. Co. , 533 N.W.2d 25, 29 (Minn. 1995). "Because Minnesota's long-arm statute is coextensive with the constitutional limits of due process, the inquiry necessarily focuses on the personal-jurisdiction requirements of the [U.S.] Constitution." Lorix v. Crompton Corp. , 680 N.W.2d 574, 577 (Minn. App. 2004). To satisfy this due-process requirement, a plaintiff must show that a defendant purposefully established "minimum contacts" with a forum state such that maintaining jurisdiction there does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington , 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) ; Marshall v. Inn of Madeline Island , 610 N.W.2d 670, 673-74 (Minn. App. 2000). The minimum-contacts requirement may be satisfied through general personal jurisdiction or specific personal jurisdiction. Domtar , 533 N.W.2d at 30. General personal jurisdiction exists when a nonresident defendant's contacts with the forum state are "continuous and systematic." Id. In contrast, specific personal jurisdiction exists "when the defendant's contacts with the forum state are limited, yet connected with the plaintiff's claim such that the claim arises out of or relates to the defendant's contacts with the forum." Id. (emphasis added).
Minnesota courts use a five-factor test to determine whether the exercise of personal jurisdiction over a foreign defendant satisfies federal due-process requirements. Juelich , 682 N.W.2d at 570. The test requires the assessment of: (1) the quantity of contacts with the forum state; (2) the nature and quality of the contacts; (3) the connection of the cause of action with the contacts; (4) the interest of the state in providing a forum; and (5) the convenience of the parties. Id. "The first three factors determine whether minimum contacts exist and the last two factors determine whether the exercise of jurisdiction is reasonable according to traditional notions of fair play and substantial justice." Id.
Here, Ford concedes four of the factors and challenges only the third factor, arguing that Bandemer's injury has no connection with Ford's contacts with Minnesota because the Crown Victoria was not assembled, designed, serviced, or originally sold in Minnesota. Bandemer alleges that Ford's defectively designed, manufactured, and marketed car caused his injury. In Minnesota, marketing that specifically targets Minnesota residents and is related to the cause of action can satisfy the third factor. See Rilley v. MoneyMutual, LLC , 884 N.W.2d 321, 337-38 (Minn. 2016). Therefore, the key issue here is whether Ford's marketing activities specifically targeted Minnesota residents and whether they were related to Bandemer's injury.
In Rilley , the Minnesota Supreme Court held that a defendant's email solicitation and Google AdWords advertising campaign, both specifically targeting Minnesota residents, were sufficient to establish minimum contacts. Id. Indeed, the supreme *715 court stated that even solicitation emails "alone are sufficient to support a finding of personal jurisdiction." Id. at 337 ; see also Marquette Nat'l Bank of Minneapolis v. Norris , 270 N.W.2d 290, 292 (Minn. 1978) (lack of physical presence in state by nonresident appellants was of no consequence when transaction accomplished by mail and telephone). The supreme court further noted that, because geographic destination is more readily discernible in direct mail than in email, a connection between the sender of the mail and the forum would not be merely "random, fortuitous, or attenuated." Rilley , 884 N.W.2d at 330-31.
Here, Ford sent direct mail to consumers in Minnesota.[2] Ford admitted that it also provided regional advertising in Minnesota directed by its Ford Dealer Advertising Funds (FADFs), and provided the FADFs with "creative content." These contacts were not "random, fortuitous, or attenuated" but rather constituted "intertwined" contacts with both Minnesota residents and the state of Minnesota. See id. at 329. Through these marketing activities, Ford has established a "substantial connection between the defendant, the forum, and the litigation, such that [it] purposefully availed [itself] of the forum and reasonably anticipated being haled into court" in Minnesota. See id. at 332 (quotation omitted).
Ford also argues that its marketing activities in Minnesota were not related to Bandemer's injury because the advertisement in Minnesota did not specifically promote the Crown Victoria. This argument lacks merit.
In Rilley , the appellant raised a similar argument that respondents provided no evidence that respondents saw the Google Ads that caused them to apply for a loan from defendant. Id. at 336. The Minnesota Supreme Court rejected this argument, stating that "[a]lthough at this early stage of the litigation there is no evidence that the Google Ads actually caused any of the claims, the Google Ads are sufficiently related to the claims of respondents to survive a motion to dismiss." Id. at 337.
Ford's marketing activities were designed to promote sales of Ford's vehicles to Minnesota consumers. The Crown Victoria is one of Ford's vehicles and was one of many products that Ford tried to promote through its marketing campaign in Minnesota. Bandemer's injury was caused by a Crown Victoria sold to a Minnesota resident. Moreover, Bandemer alleged that Ford's marketing included safety assurances and that Ford collected vehicle data from Minnesota drivers in its Minnesota service centers, which housed its design-development process. As in Rilley , Bandemer has made a prima facie showing that Ford's marketing activities are sufficiently related to the cause of action to survive Ford's motion to dismiss.
Finally, Ford argues that, under the United States Supreme Court's recent decisions in Bristol-Myers Squibb Co. v. Super. Ct. , --- U.S. ----, 137 S.Ct. 1773, 198 L.Ed.2d 395 (2017), and Walden v. Fiore , 571 U.S. 277, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014), Minnesota does not have specific personal jurisdiction over Ford because Ford's relevant conduct occurred entirely out-of-state. We are not persuaded.
*716 Both Bristol-Myers and Walden held that there must be "a connection between the forum and the specific claims at issue." Bristol-Myers , 137 S.Ct. at 1776 (citing Walden , 134 S.Ct. at 1115 ). The Supreme Court noted that courts must consider a variety of interests to determine whether specific personal jurisdiction exists, including an "activity or occurrence that takes place in the forum [s]tate[,]" a connection between the underlying controversy and the forum, the interests of the forum state, and convenience of the plaintiff. Bristol-Myers , 137 S.Ct. at 1780-81. These factors reflect long-established Supreme Court precedent and mirror Minnesota's five-factor test. See Rilley , 884 N.W.2d at 328 ("This five-factor test is simply a means for evaluating the same key principles of personal jurisdiction established by the United States Supreme Court....").
Minnesota's five-factor test to determine whether it has specific personal jurisdiction over Ford is consistent with Bristol-Myers and Walden and their application. In Bristol-Myers , the Supreme Court held that the plaintiff's cause of action was not connected to the defendant's contacts with California when the nonresident plaintiffs sued the defendant for the harm they sustained outside of California. 137 S.Ct. at 1782. The nonresident plaintiffs obtained the prescription medication, sustained injuries, and received treatment for their injuries outside of California. Id. Notably, the defendant did not contest that California had specific personal jurisdiction over California residents based on the defendant's "assertedly misleading marketing and promotion of that product." Id. at 1779.
In Walden , a Nevada resident sued a police officer in the United States District Court for the District of Nevada after the officer committed allegedly tortious conduct in a Georgia airport. 134 S.Ct. at 1119. The Supreme Court held that Nevada lacked specific personal jurisdiction over the officer because no part of his alleged tortious conduct occurred in Nevada and he "formed no jurisdictionally relevant contacts with Nevada." Id. at 1124.
This case involves a Minnesota resident who was injured in Minnesota while riding in a vehicle registered in Minnesota, and whose injuries were treated in Minnesota. In addition, as previously noted, Ford had substantial contacts with Minnesota through its marketing activities. Ford's contacts with Minnesota were sufficiently related to the cause of action and satisfy the third factor.
Accordingly, the third factor favors Minnesota's exercise of specific personal jurisdiction over Ford. Because Bandemer's allegations and supporting evidence are taken as true during the pretrial stage, he has successfully made a prima facie showing that the district court had personal jurisdiction over Ford. Therefore, the district court did not err in denying Ford's motion to dismiss.[3]
DECISION
The district court did not err in denying Ford's motion to dismiss for lack of personal jurisdiction. Bandemer is a Minnesota resident who sustained an injury in Minnesota while riding in the passenger seat of a Minnesota-registered Ford vehicle and who subsequently received medical treatment for his injury in Minnesota. Ford purposefully availed itself of the benefits and protections of Minnesota law because it initiated contacts with Minnesota and actively sought out business through marketing in the state. As such, it should *717 have reasonably anticipated being haled into court in Minnesota, and we therefore affirm.
Affirmed.

The parties stipulated that Minnesota did not have general personal jurisdiction over Ford.

Ford also sponsors many athletic, racing, and educational teams and events in Minnesota. For example, Ford licensed its 1966 Ford Mustang to be built as a model car for the Minnesota Vikings. And Ford sponsored events such as the 2016 "Ford Experience Tour" and the "Ford Driving Skills for Life Free National Teen Driver Training Camp" in Minnesota.

Because we affirm on the ground of specific personal jurisdiction, we need not decide whether Minnesota has consent-based jurisdiction over Ford.