## In re MINNESOTA ASBESTOS LITIGATION.

### No. C1–95–223.

Supreme Court of Minnesota.

Aug. 15, 1996.

David F. Herr, Cooper S. Ashley, Mark W. Lee, Michael C. McCarthy, Maslon, Edelman, Borman & Brand, P.L.L.P., Minneapolis, for appellant.

Harvey N. Jones, Michael R. Strom, Sieben, Polk, LaVerdiere, Jones & Hawn, P.A., Hastings, James M. Hughes, Charleston, SC, for respondent.

## OPINION

PAGE, Justice.

Colonial Sugar Refining Co., Ltd. (CSR), an Australian company, seeks review of a court of appeals decision which held that CSR is subject to personal jurisdiction in the State of Minnesota. CSR is one of several defendants in a personal injury lawsuit brought by 187 plaintiffs alleging causes of action in negligence, strict liability, and breach of express and implied warranties of merchantability and fitness for intended purposes. The defendants are alleged to have either manufactured, sold, or distributed asbestos products or raw materials for use in Minnesota. CSR, asserting that it lacked sufficient contacts with the State of Minnesota for Minnesota's courts to exercise personal jurisdiction over it, moved the district court for dismissal of the claims against it.[1] The district court granted CSR's motion. On appeal, the court of appeals reversed and held that CSR's contacts with Minnesota were sufficient "to satisfy the due process requirements for exercising jurisdiction." *In re Minnesota Asbestos Litigation*, 540 N.W.2d 896, 902 (Minn.App.1995). In doing so, the court of appeals adopted the plaintiffs' argument that CSR had indirect contacts with Minnesota which could be inferred from its sale of raw materials in the form of asbestos to Johns–Manville Inc., a manufacturer of products containing asbestos which were introduced into Minnesota. We reverse.

CSR is an Australian Limited Liability Company with its principal place of business in Sydney, Australia. CSR is not registered or licensed to do business in any state in the United States, does not have an agent for service of process in any state, and does not own any property in the United States. Prior to 1962, CSR partially owned a company by the name of Australian Blue Asbestos Pty. Ltd. (ABA), and, in 1962, CSR "acquired all issued capital" in ABA. Prior to 1966, ABA sold blue crocidolite asbestos (asbestos) to Johns–Manville, Inc. (Manville) and several of Manville's subsidiary companies. In connection with these sales, CSR was a sales agent for ABA. Manville is alleged to have used the CSR asbestos as an ingredient when manufacturing Transite Pressure Pipe. Some of Manville's Transite Pressure Pipe was sold and used in Minnesota. According to CSR, neither it nor ABA ever:

1. Maintained an office, telephone listing, post office box, mailing address, or bank account in Minnesota;

2. Employed anyone or had agents based or residing in Minnesota;

3. Owned, leased, or possessed any interest whatsoever in any assets in Minnesota, including real property;

---

1. CSR also sought dismissal based on insufficiency of service of process which was denied by the district court. That issue was not appealed and is not before the court in this appeal.

4. Had been a party to a contract in Minnesota or entered into a contract, the terms of which required performance in whole or in part in Minnesota or the application of Minnesota law;

5. Engaged in any advertising directed to or otherwise calculated to reach Minnesota;

6. Sold any products in or transported any products to Minnesota or derived any revenue from the sale of goods or services or any other activity in Minnesota;

7. Mined, manufactured, processed, exported, converted, compounded, retailed and/or required to be used asbestos or asbestos-containing products to or for anyone in Minnesota;

8. Designed, tested, evaluated, packaged, furnished, supplied, or sold asbestos or asbestos-containing products to or for anyone in Minnesota; and

9. Marketed, distributed, or shipped raw asbestos to or in Minnesota.

In their effort to establish a prima facie case that the district court had personal jurisdiction over CSR, the plaintiffs submitted the affidavit of Ann K. Ritter, which had 37 exhibits attached. The affidavit asserts that Ritter is an attorney licensed to practice in the State of South Carolina and has been a plaintiff's attorney in asbestos litigation around the country, including cases against CSR; that the attached exhibits were produced by CSR or other defendants in asbestos litigation from around the country; and that "[u]pon information and belief, each of these [exhibits] could be authenticated for use at trial, and indeed many of them have previously been used as exhibits in other trials." The exhibits were submitted without any further support. In general, the exhibits suggest that: (1) CSR sold asbestos to Manville; (2) Manville also received asbestos from South Africa; (3) Manville's Transite Pressure Pipe contained approximately 25% asbestos; (4) Manville had a national market for its Transite Pressure Pipe; (5) CSR and Manville advertised in asbestos trade magazines; and (6) CSR employees visited Manville plants in the United States.

The district court granted CSR's motion and dismissed CSR from the lawsuit for lack of personal jurisdiction. The district court found that CSR's contacts with Minnesota were slight and indirect and, therefore, CSR lacked sufficient contacts with Minnesota for it to assert personal jurisdiction. The court of appeals, relying on our decision in *Rostad v. On–Deck, Inc.,* 372 N.W.2d 717 (Minn.), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985), its decision in *Stanek v. A.P.I., Inc.,* 474 N.W.2d 829 (Minn.App. 1991), *pet. for review denied* (Minn., Oct. 31, 1991), and *cert. denied,* 503 U.S. 977, 112 S.Ct. 1603, 118 L.Ed.2d 316 (1992), and the exhibits from the Ritter affidavit, concluded that CSR had sufficient contacts with Minnesota to satisfy due process and reversed. *In re Minnesota Asbestos Litigation,* 540 N.W.2d at 902. In support of that conclusion, the court of appeals noted that: (1) Manville acted essentially as a distributor for CSR asbestos; (2) asbestos is inherently dangerous; (3) Manville products containing CSR asbestos were distributed in Minnesota; (4) CSR profited from Manville's market; (5) CSR had a significant working relationship with Manville; and (6) CSR employees stayed two months at a Manville research and production facility, which "is the equivalent of the marketing in *Rostad.*" *Id.* at 900.

We are presented with two issues: (1) whether the district court erred in admitting, and the court of appeals erred in relying on, the unauthenticated Ritter affidavit exhibits submitted by the plaintiffs to establish jurisdiction; and (2) whether the court of appeals erred when it determined that the district court's exercise of personal jurisdiction over CSR would not violate due process.

▮▮▮ CSR claims that it was error for the court of appeals to rely on the Ritter affidavit exhibits to support its conclusion that CSR had sufficient contacts with Minnesota to satisfy due process because the exhibits are not properly a part of the record. This claim is based on CSR's contention that the plaintiffs failed to properly authenticate the exhibits. We agree. The exhibits, if relied on, have the potential to affect CSR's substantial rights. Our review of the record indicates that the Ritter affidavit exhibits

were not authenticated as required by Rule 901 of the Minnesota Rules of Evidence. We have said that "[w]here one party attempts to prove that the statutory and constitutional requisites for jurisdiction are present based upon wholly unverified and unattested evidence, it cannot be said that only insubstantial rights of the opposing party are affected." *Sausser v. Republic Mortgage Investors,* 269 N.W.2d 758, 761 (Minn. 1978). Because the exhibits were not authenticated and because we cannot say that "only insubstantial rights are affected," we conclude that the exhibits were not properly a part of the record and that it was improper for the court of appeals to have relied on them.

 Next, we turn to the issue of whether the court of appeals properly concluded that CSR had sufficient contacts with Minnesota for the district court to exercise jurisdiction over CSR without violating CSR's due process rights. Minnesota Statutes section 543.19 (1994) "permits [our] courts to assert jurisdiction over defendants to the extent that federal constitutional requirements of due process will allow." *Domtar, Inc. v. Niagara Fire Ins. Co.,* 533 N.W.2d 25, 29 (Minn.), *cert. denied,* — U.S. ——, 116 S.Ct. 583, 133 L.Ed.2d 504 (1995). Federal due process is satisfied when the evidence demonstrates that "the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). When a corporation conducts business within a state and enjoys the benefits and protections of that state's laws, the due process clause is not violated by requiring the corporate defendant to respond to a suit in that state. *International Shoe,* 326 U.S. at 319, 66 S.Ct. at 159–60. In *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court said, "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over

a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 297–98, 100 S.Ct. at 567. The quality of the contacts must be such that the exercise of jurisdiction also comports with "traditional notions of fair play and substantial justice." *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940), *quoted in Domtar,* 533 N.W.2d at 29. "[T]he burden is upon plaintiff to prove not only that personal jurisdiction is authorized by the terms of § 543.19 in the particular instance but also that minimum contacts exist rendering the exercise of such jurisdiction consistent with due process." *All Lease Co. v. Betts,* 294 Minn. 473, 474, 199 N.W.2d 821, 822 (1972). The plaintiffs have not met their burden here.

 In *Rostad v. On–Deck, Inc.,* 372 N.W.2d 717 (Minn.), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985), we analyzed five factors to determine whether the defendant had the requisite minimum contacts with Minnesota to support Minnesota's exercise of jurisdiction. The five factors are:

1. The quantity of contacts with the forum state;
2. The nature and quality of the contacts;
3. The source and connection of the cause of action with these contacts;
4. The interest of the state providing a forum; and
5. The convenience of the parties.[2]

*Id.* at 719–20.

 From the record, it is clear that CSR never had any direct contact of any sort with Minnesota. The plaintiffs assert, however, that CSR's contacts with Minnesota were indirect and can be inferred from CSR's relationship with Manville. According to the plaintiffs, CSR placed asbestos into the stream of commerce by selling it to Manville, which used it to make Transite Pressure Pipe, which was then distributed, sold, and/or used in Minnesota. In essence, the plaintiffs contend that Manville became the distributor for CSR's asbestos and therefore Manville's

---

**2.** This court has previously stated that, of these five factors, "[t]he first three factors are the most important, the last two of lesser importance." *Rostad,* 372 N.W.2d at 720.

contacts with Minnesota should be imputed to CSR. There is, however, no legal basis for such a contention. The fact that CSR sold a raw material to Manville for use by Manville in its finished product does not make Manville CSR's distributor. Unlike the defendants in *Rostad*, the record does not indicate that Manville's contacts with Minnesota were on behalf of CSR or with CSR's approval. *Compare Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 613–15 (8th Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 359, 130 L.Ed.2d 313 (1994) (concluding that a fireworks manufacturer could be subject to personal jurisdiction in the forum state where the fireworks distributor "purposefully reaped the benefits" of the forum state's laws by its "effort to reach much of the county through a limited number of regional distributors").

Certainly, Manville had numerous contacts with Minnesota; however, it is the contacts of the nonresident defendant—here, CSR—that are to be considered when examining whether there are sufficient contacts to permit the exercise of personal jurisdiction. As the United States Supreme Court has said: "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1958). Here, there is no evidence in the record that establishes that CSR purposefully established any contacts either directly or indirectly with Minnesota.[3] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985) (stating that the "touchstone" of due process requires that "the defendant purposefully established 'minimum contacts' in the forum State"). In that the record indicates that CSR had no contacts with Minnesota, there can be no evidence of the quality and nature of those contacts or the connection of those contacts with the plaintiffs' cause of action. Because the plaintiffs have failed to establish: (a) that CSR

had a sufficient quantity of contacts with Minnesota; (b) the quality and nature of those contacts; or (c) the connection of their cause of action with any contacts CSR had with Minnesota, we conclude that Minnesota's exercise of personal jurisdiction over CSR would violate due process.

 We also conclude that the exercise of jurisdiction over CSR would "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)). As we noted previously, there is no evidence before us which indicates that CSR had any contacts with Minnesota. It is true that CSR sold asbestos to Manville; however, except for plaintiffs' bald assertion, there is nothing in the record suggesting that any of that asbestos made its way into the Manville pipe plaintiffs were exposed to in Minnesota. Further, the evidence in the record establishes that CSR, like the regional distributor and the auto dealer in *World–Wide Volkswagen*, did not do anything to purposely direct its activities or products toward Minnesota or its residents. *See World–Wide Volkswagen v. Woodson*, 444 U.S. 286, 298, 100 S.Ct. 559, 567–68, 62 L.Ed.2d 490 (1980). While it may have been foreseeable that some of CSR's asbestos might have made its way into Minnesota, mere foreseeability is an insufficient benchmark to establish personal jurisdiction. *Id.* at 295, 100 S.Ct. at 566. The foreseeability required is one which demonstrates "that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567. To show that kind of foreseeability, the plaintiffs must show that CSR intended to directly or indirectly market its product in Minnesota or that CSR delivered its asbestos into the stream of commerce with the expectation that it would be purchased by customers in Minnesota. As in *World–Wide Volks-*

---

3. Because of the plaintiffs' heavy reliance on the Ritter affidavit exhibits to support their argument that CSR had sufficient contacts with Minnesota, striking those exhibits from the record leaves virtually no support in the record for that proposition. We note, however, that we would have reached the same conclusion had we considered the stricken Ritter affidavit exhibits. The exhibits simply do not shed any light on CSR's contacts with Minnesota.

248

*wagen,* the plaintiffs have not shown that kind of foreseeability. The plaintiffs have failed to establish that CSR could "reasonably anticipate being haled into court" in Minnesota.

Because plaintiffs have failed to establish that CSR had sufficient contacts with Minnesota and because traditional notions of fair play and substantial justice would be offended by the district court's exercise of jurisdiction over CSR, we reverse the court of appeals and reinstate the district court order dismissing the complaint against CSR.

Reversed.