Diane **LORIX**, individually and on behalf of all others similarly situated, Respondent,

v.

**CROMPTON CORPORATION,** et al., Defendants,

**Flexsys NV, et al., Appellants.**

No. A03–1518.

Court of Appeals of Minnesota.

June 2, 2004.

Garrett D. Blanchfield, Jr., Mark Reinhardt, Reinhardt Wendorf & Blanchfield, St. Paul, MN, for respondent.

William L. Greene, David R. Crosby, Leonard Street and Deinard, PA, Minneapolis, MN; and James D. Slear, Gibson, Dunn & Crutcher, LLP, Washington, DC, for appellants.

Considered and decided by WRIGHT, Presiding Judge; SCHUMACHER, Judge; and WILLIS, Judge.

## OPINION

WILLIS, Judge.

On appeal from a district court order denying appellants' motion to dismiss for lack of personal jurisdiction, appellants argue that the district court erroneously concluded that it could exercise personal jurisdiction over appellants. Because we conclude that respondent has not shown sufficient contacts for the exercise of either specific or general jurisdiction, we reverse.

## FACTS

Respondent Diane Lorix's amended class-action complaint alleges that appellants Flexsys NV and Flexsys America LP (collectively "Flexsys") conspired with the other named defendants to fix the prices of certain rubber-processing products, in violation of Minn.Stat. §§ 325D.49–.66D (2002), the Minnesota Antitrust Law. The complaint alleges that Flexsys, along with the other defendants, produce most of the rubber-processing chemicals sold in the United States and, in turn, sell most of those chemicals to automobile-tire manufacturers. Lorix brought suit in Minnesota district court on behalf of a putative class consisting of "[a]ll persons who purchased tires in the State of Minnesota other than for resale from January 1, 1994 to the present which were manufactured using rubber-processing chemicals sold by Defendants." In her amended class-action complaint, Lorix maintains that (1) the alleged price-fixing conspiracy had the "effect of fixing, raising, stabilizing, and maintaining the price for rubber-processing chemicals sold to tire manufacturers," (2)

the tire manufacturers passed the supra competitive price on to consumers, and (3) thus, Minnesota consumers paid more for tires manufactured with Flexsys's rubber-processing chemicals than they would have paid absent the conspiracy. The complaint seeks recovery of the overcharges paid by Minnesota consumers as a result of the alleged conspiracy; similar actions have been filed against the same defendants in 18 other jurisdictions.[1]

Flexsys NV is headquartered in Belgium and Flexsys America LP, which is the United States subsidiary of Flexsys NV, is a Delaware limited partnership with its headquarters located in Akron, Ohio. Neither is licensed to do business in Minnesota or has any employees, sales agents, or business operations in Minnesota. Flexsys moved to dismiss Lorix's claim on the ground that the Minnesota district court lacks personal jurisdiction over Flexsys. The district court denied the motion, and this appeal follows.

### ISSUE

Did the district court err by denying appellants' motion to dismiss for lack of personal jurisdiction?

### ANALYSIS

■ An order denying a motion to dismiss for lack of personal jurisdiction is appealable as a matter of right. *Stanek v. A.P.I., Inc.,* 474 N.W.2d 829, 831 (Minn. App.1991), *review denied* (Minn. Oct. 31, 1991).

■ Determining whether personal jurisdiction exists is a question of law, and this court need not defer to the district court's decision. *Id.* at 832. "When juris-

diction is challenged, the plaintiff bears the burden of proving that sufficient contacts exist with the forum state to support personal jurisdiction." *V.H. v. Estate of Birnbaum,* 543 N.W.2d 649, 653 (Minn.1996).

■ A Minnesota court may assume jurisdiction over nonresident defendants only to the extent permitted by Minnesota's long-arm statute and by the Due Process Clause of the Fourteenth Amendment. *Marshall v. Inn on Madeline Island,* 610 N.W.2d 670, 673 (Minn.App. 2000). Because Minnesota's long-arm statute is coextensive with the constitutional limits of due process, the inquiry necessarily focuses on the personal-jurisdiction requirements of the federal constitution. *Valspar Corp. v. Lukken Color Corp.,* 495 N.W.2d 408, 410–11 (Minn. 1992). To satisfy the Due Process Clause, a plaintiff must show that a defendant has "minimum contacts" with a forum state such that maintaining jurisdiction there does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The defendant must reasonably anticipate the possibility of being haled into the state's courts. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

1. Under the Supreme Court decision in *Illinois Brick Co. v. Illinois,* indirect purchasers have no recourse under federal law. 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). Lorix's counsel stated at oral argument that the 18 other jurisdictions in which actions similar to this have been brought are states that permit indirect purchasers to recover for injuries as a result of violations of state antitrust law.

 Minnesota courts use a five-factor test to determine whether the exercise of personal jurisdiction is proper:

(1) The quantity of the contacts with the forum state,

(2) The nature and quality of the contacts,

(3) The source and connection of the cause of action with these contacts,

(4) The interest of the state in providing a forum,

(5) The convenience of the parties.

*Vikse v. Flaby,* 316 N.W.2d 276, 282 (Minn. 1982). There is a distinction between specific and general personal jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 nn. 8–9, 104 S.Ct. 1868, 1872 nn. 8–9, 80 L.Ed.2d 404 (1984); *Valspar,* 495 N.W.2d at 411. Specific jurisdiction exists when the cause of action arises out of or is related to the defendant's contacts with the forum. *Helicopteros Nacionales,* 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8. Specific jurisdiction can exist as the result of a single contact with the forum if the cause of action arose out of that contact. *See McGee v. Int'l Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). General jurisdiction exists when a defendant has "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales,* 466 U.S. at 415–16, 104 S.Ct. at 1872–73.

The district court denied Flexsys's motion to dismiss, finding that it could exercise personal jurisdiction over Flexsys; the district court, however, did not articulate whether it found that it had specific or general jurisdiction over Flexsys. Flexsys argues that its contacts with Minnesota were not related to the cause of action so as to establish specific jurisdiction and are not of a sufficient quantity or quality to establish general jurisdiction.

### 1. Specific Jurisdiction

Flexsys argues that it is not subject to specific jurisdiction because (1) its in-state sales are unrelated to Lorix's claim and (2) its out-of-state sales to tire manufacturers are not a purposeful contact directed at Minnesota. In judging minimum contacts for purposes of assessing whether the exercise of specific jurisdiction is appropriate, a court focuses on the "relationship among the defendant, the forum, and the litigation." *Id.* at 414, 104 S.Ct. at 1872. Specific jurisdiction may be found when the nonresident defendant has "purposefully directed [its] activities at residents of the forum and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528 (1985) (citation omitted).

 Flexsys argues first that because its only sales of rubber-processing chemicals in Minnesota were to 3M and HCI Worum, which used them to make products other than tires, there is no connection between Flexsys's sales in Minnesota and Lorix's alleged injury. Thus, Flexsys argues, its sales to 3M and HCI Worum did not provide "fair warning" of being sued in Minnesota for injuries resulting from the sales of tires because Lorix's claim does not "involve" and is not "connected with" or "directly related to" appellants' sales to 3M and Worum.

Lorix contends, however, that there must only be a "reasonably close connection" between the cause of action and the defendant's contacts with the forum state to support a finding of specific jurisdiction. Lorix argues that the sale of rubber-processing chemicals to Minnesota corporations to manufacture products other than tires is sufficiently related to a suit alleging that downstream indirect purchasers paid a supracompetitive price for tires that

contained those same rubber-processing chemicals. But for specific jurisdiction to exist, a plaintiff must show a more direct connection between his alleged injury and the defendant's contacts with the forum state. *See Marshall,* 610 N.W.2d at 676 (holding "entering into a contract with a Minnesota resident can justify the exercise of specific jurisdiction but only where the dispute involves the contract"); *Behm v. John Nuveen & Co.,* 555 N.W.2d 301, 307 (Minn.App.1996) (holding that specific jurisdiction requires plaintiff to show that defendant's forum contacts be "related directly" to the subject of the lawsuit). Because Flexsys's Minnesota sales were to companies that used the chemicals to make products other than tires, we conclude that Lorix's claim that Minnesota consumers were overcharged for tires did not arise out of or relate to Flexsys's Minnesota sales and, thus, do not constitute a basis for the exercise of specific jurisdiction.

Flexsys further argues that its out-of-state sales of rubber chemicals to tire manufacturers do not constitute a contact with Minnesota that would provide a basis for specific jurisdiction. Lorix counters that Flexsys could "clearly anticipate being haled into court in Minnesota" based on these sales because it would have had "full knowledge that the effects of [its] actions would likely be passed on through the chain of commerce to Minnesota consumers" and estimates that since 1994, Flexsys has indirectly derived more than $12.4 million in revenue from Minnesota based on its sales to tire manufacturers that sold to Minnesota tire purchasers.[2] Lorix asserts

that the Minnesota Antitrust Law provides an avenue of redress for indirect purchasers and maintains that because the United States Supreme Court recognized in *Calif. v. ARC Am. Corp.* that the term "indirect purchaser" includes persons injured by the fixing of prices for a component part of a finished product, it is irrelevant that Flexsys's products were incorporated into tires before being sold to Minnesota consumers.[3] 490 U.S. 93, 97, 109 S.Ct. 1661, 1663, 104 L.Ed.2d 86 (1989).

Lorix argues that it is "irrelevant" whether Flexsys's products were incorporated into tires before being sold to Minnesota consumers because it "is precisely this type of remote transgressor that the Minnesota Antitrust Law was intended to reach," and that, thus, it is appropriate for Minnesota courts to exercise specific jurisdiction over Flexsys. We disagree. While the Minnesota Antitrust Law may confer subject-matter jurisdiction, the issue here is personal jurisdiction. And

> it would put the cart before the horse to conclude that the entire constitutionally-mandated minimum contacts analysis may simply be jettisoned whenever a legislature enacts a statute which is intended to have extraterritorial application. On the contrary, we emphasize that the personal jurisdiction analysis must precede, and proceed independently of, the question whether a substantive [ ] statute has been violated.

*See Holder v. Haarmann & Reimer Corp.,* 779 A.2d 264, 276 n. 13 (D.C.2001).

**2.** Lorix states that this estimated figure was arrived at "by comparing the value of the proportionate share of tire shipments in Minnesota with [Flexsys's] total [market] share of rubber-processing chemicals in the United States."

**3.** Minn.Stat. § 325D.57 provides that "[a]ny person, any governmental body, or the state of Minnesota or any of its subdivisions or agencies, injured directly or indirectly by a violation of sections 325D.49 to 325D.66, shall recover three times the actual damages sustained, together with costs and disbursements, including reasonable attorneys' fees."

The Minnesota supreme court has held that a nonresident supplier does not have contacts with Minnesota that would support the exercise of personal jurisdiction by selling raw material to a nonresident manufacturer when (1) the manufacturer incorporated the raw material into a different product that the manufacturer then sold in Minnesota in accordance with its own business plans and (2) there was no showing that the supplier delivered its product into the stream of commerce with the expectation that it would be purchased by customers in Minnesota. *In re Minn. Asbestos Litigation*, 552 N.W.2d 242, 246–47 (Minn.1996). The supreme court stated that because there was no showing that the manufacturer's contacts with the forum were "on behalf of [the supplier] or with [the supplier's] approval," the manufacturer's actions in selling its finished product in Minnesota did not constitute a contact by the supplier that would permit Minnesota courts to exercise personal jurisdiction over the supplier. *Id.* at 247.

Lorix argues that *Minn. Asbestos* is distinguishable, however, because the plaintiff there sought to exercise personal jurisdiction over a defendant company that had no direct contacts with Minnesota and asserts that, here, Flexsys had direct contacts with Minnesota through its sales to two Minnesota businesses and its website.[4] But the holding in *Minn. Asbestos* does not rest on the fact that the supplier did not have direct contacts with the forum; rather *Minn. Asbestos* held that the contacts that a manufacturer may have with the forum may not be imputed to a suppli-

er when there is no showing that (1) the supplier intended to directly or indirectly market its product in the forum or that the supplier delivered its product into the stream of commerce with the expectation that it would be purchased by customers in the forum or (2) the manufacturer's actions were done "on behalf of [the supplier] or with [the supplier's] approval." *See id.* Because Flexsys sells its product to tire manufacturers located outside of Minnesota, which produce their own products and then sell in accordance with their own business plans, we conclude that any contacts that the tire manufacturers have with Minnesota may not be imputed to Flexsys.

This conclusion is supported by *Asahi Metal Indus. Co. v. Superior Court*, in which a plurality of the United States Supreme Court explained that the "placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum [s]tate." 480 U.S. 102, 112, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987). *Asahi* holds that a showing is needed of "additional conduct" by a defendant evidencing an "intent or purpose" to serve the market in the forum state. *Id.* And, here, Lorix has not shown that Flexsys's out-of-state sales to tire manufacturers include any "additional conduct" by Flexsys, such as designing a product for the Minnesota market, advertising in Minnesota, or marketing the product through a distributor who had agreed to serve as a sales agent in Minnesota. *Id.* Thus, we conclude that Flexsys's out-of-state sales of rubber-processing chemicals to tire manu-

---

4. Although the record includes no information regarding the Flexsys website, Lorix alleges that Flexsys's website promotes its products in Minnesota, asserting that the website states "Flexsys is committed to developing web applications that benefit our customers and improve business efficiency. We offer our customers fast, secure, around-the-clock on-line ordering and access to the information you want—when you want it." Flexsys asserts, however, that its website is "aimed at no particular place in the world" and does not actually sell products to Internet users but instead gives existing customers who have user-identification numbers and passwords the ability to order online.

facturers are not a basis for the exercise of specific jurisdiction over Flexsys by a Minnesota court.

### 2. General Jurisdiction

██ Flexsys argues next that its contacts with Minnesota do not support the exercise of general jurisdiction over Flexsys by Minnesota courts. General jurisdiction exists when a nonresident defendant's contacts with the forum are so substantial and are of such a nature that the state may assert jurisdiction over the defendant even for causes of action unrelated to the defendant's contacts with the forum state. *See Valspar*, 495 N.W.2d at 411. "[C]onduct of single or isolated items of activities in a state in [a] corporation's behalf are not enough to subject it to [general jurisdiction]." *Int'l Shoe*, 326 U.S. at 317, 66 S.Ct. at 159. Only when a defendant's "continuous corporate operations within a state [are] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities" may a court assert general jurisdiction over a defendant. *Id.* at 318, 66 S.Ct. at 159. For example, in *Helicopteros Nacionales*, the Supreme Court held that a defendant corporation's contacts with the forum state, which included the temporary physical presence of a corporate officer for contract negotiations, regular purchases of equipment and training services from a business in the forum, and personnel training in the forum, were not sufficiently continuous and systematic so that the attempted exercise of general jurisdiction would satisfy the requirements of due process. 466 U.S. at 418–19, 104 S.Ct. at 1874; *cf. Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445, 447–48, 72 S.Ct. 413, 418, 419, 96 L.Ed. 485 (1952) (holding that the exercise of general jurisdiction over a foreign corporation was "reason-able and just" when the corporation's president maintained an office in the forum where he conducted activities on behalf of the company, such as keeping company files, holding directors' meetings, carrying on business correspondence, and distributing salary checks drawn on forum bank accounts).

██ While the record shows that Flexsys sold its products directly to two Minnesota companies, Flexsys maintains that these sales, which amounted to $633,424 from January 2000 to December 2002 and represented 0.01% of Flexsys's gross annual sales, were "simple commercial contacts" and were not continuous and substantial contacts justifying the exercise of general jurisdiction. In *Burlington Indus., Inc. v. Maples Indus., Inc.*, the eighth circuit court of appeals held that a foreign corporation's sales to forum retailers, which were unrelated to the plaintiff's claims, constituted "[s]imple commercial contacts" that were insufficient to form the basis of general jurisdiction in the forum, even though officers of the foreign corporation went to the forum to obtain business and the foreign corporation used machines built in the forum to manufacture its products. 97 F.3d 1100, 1103 (8th Cir.1996). Thus, Flexsys maintains that "simple commercial contacts" unrelated to a plaintiff's claim are not transformed into an adequate constitutional basis for jurisdiction, even when the sales are of a much greater dollar volume than Flexsys's sales in Minnesota. *See Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1198 (4th Cir.1993) (finding insufficient to support the exercise of general jurisdiction defendant's annual sales of $9–13 million in the forum state over a five-year period, which constituted 2% of defendant's total sales, employment of sales people in the forum state, and purchases in the forum state); *Metro. Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d

560, 573 (2nd Cir.1996) (holding that "standing alone," defendant's $4 million in sales in the forum state over a seven-year period "may not have been sufficient" to support the exercise of general jurisdiction but that the numerous other contacts with the forum in the case, including advertising, relationships with dealers, and more than 150 visits "tip[ped] the balance" and led the court to conclude that there were sufficient contacts to allow the exercise of general jurisdiction).

Lorix counters that Flexsys misstates the relevant test by arguing that the exercise of general jurisdiction is inappropriate because its in-state sales constituted only approximately 0.01% of its total sales and asserts that, instead, a general-jurisdiction analysis must focus on whether the defendant's contacts with the forum are substantial. *See Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 709 (8th Cir.2003) (stating that the "[p]ercentage of a company's sales in a given state [is] generally irrelevant ... our relevant inquiry is not whether the percentage of a company's contacts is substantial for that company; rather, our inquiry focuses on whether the company's contacts are substantial for the forum"). We agree that the percentage of a company's sales in a particular state is generally irrelevant, but we conclude that, standing alone, Flexsys's contacts with 3M and HCI Worum are not substantial enough to justify the exercise of general jurisdiction. Thus, we must determine whether Flexsys has other contacts with Minnesota that would "tip the balance" and lead us to conclude that the exercise of general jurisdiction is appropriate.

Lorix asserts that Flexsys's out-of-state sales to tire manufacturers are substantial and continuous contacts with Minnesota because Flexsys elected to serve the Minnesota market indirectly by selling its products to tire manufacturers that it "knew would then sell those tires to Minnesota residents." But we do not find Lorix's argument persuasive because the evidence does not show (1) that Flexsys targeted Minnesota consumers for these sales, (2) apart from Lorix's own estimate, how much, if any, revenue Flexsys indirectly derived from Minnesota consumers as the result of its sales of rubber-processing chemicals to out-of-state tire manufacturers, or (3) that Flexsys used the tire manufacturers as its agents or distributors in Minnesota.

Lorix then argues that by having an interactive website, Flexsys had substantial and continuous contact with Minnesota, citing *Quality Improvement Consultants, Inc. v. Williams* for the proposition that the use of an interactive website has been recognized as a means to purposefully direct activities at Minnesota residents. No. Civ. 02–3994, 2003 WL 543393, *5–*6 (D.Minn. Feb.24, 2003) (holding that interactive websites that permit users to exchange information with a host computer fall in the middle of the active-passive spectrum of commercial Internet activity and may support a finding of personal jurisdiction). Flexsys notes, however, that *Quality Improvement* further states that if every website that is accessible by the residents of a state formed a basis for jurisdiction, nearly every business in the world would be subject to suit in every state for any lawsuit and that, thus, without any evidence that an interactive website was used to conduct actual commercial transactions with forum residents, the website, standing alone, is not enough to satisfy the minimum-contacts standard. *Id.* at *6.

Courts have rejected efforts to undermine constitutional protections by invoking a defendant's mere presence on the Internet as reason for doing so:

This theory [of accessibility] simply cannot hold water. Indeed, under this view, personal jurisdiction in Internet-related cases would almost always be found in any forum in the country. We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction. The Due Process Clause exists, in part, to give a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit. *In the context of the Internet, [the defendant]'s expansive theory of personal jurisdiction would shred these constitutional assurances out of practical existence. Our sister circuits have not accepted such an approach, and neither shall we.*

*Multi-Tech Sys., Inc. v. VocalTec Communications, Inc.*, 122 F.Supp.2d 1046, 1050 (D.Minn.2000) (brackets and italics in original text; internal quotations omitted) (quoting *GTE New Media Servs., Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C.Cir.2000)). Because there is no evidence that any Minnesota resident has accessed the Flexsys website or that the Flexsys website targets Minnesota residents, we conclude that the website is not a contact with Minnesota supporting a finding of general jurisdiction. Thus, because Lorix has not shown that Flexsys's out-of-state sales and its website are contacts that would "tip the balance" in favor of finding that Flexsys has continuous and systematic contacts with Minnesota, we conclude that there is no basis for the exercise of general jurisdiction over Flexsys by Minnesota courts.

## DECISION

Because Lorix has not shown sufficient contacts that would warrant the exercise of either specific or general jurisdiction over Flexsys by Minnesota courts, the district court erred by denying Flexsys's motion to dismiss for lack of personal jurisdiction.

**Reversed.**